UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE E. GRAVELLE,

    Plaintiff,

vs                                                                          Case No: 05-74397
                                                                         Honorable Victoria A. Roberts

BANK ONE CORPORATION
PERSONAL PENSION ACCOUNT
PLAN, ET AL,

    Defendants,
_____/

## ORDER

**I.    INTRODUCTION**

    This matter is before the Court on Plaintiff's Motion for Summary Judgment and Defendants' Cross-Motion for Summary Judgment. For the following reasons, Defendants motion is **GRANTED**. Plaintiff's motion is **DENIED**.

**II.    BACKGROUND**

    Jane E. Gravelle ("Plaintiff") seeks judicial review of Bank One Corporation Personal Pension Account Plan and JPMorgan Chase & Co.'s (collectively "Defendants") denial of her claim for spousal death benefits under the JPMorgan Chase Retirement Plan ("Chase Plan"). Plaintiff's deceased spouse, Frederick Gravelle, participated in the Chase Plan and accrued a vested benefit under the Employees' Retirement Plan of NBD Bancorp, Inc. ("NBD Plan"), which was subsequently merged into the First Chicago NBD Corp. Plan, Bank One Corporation Personal Pension Account Plan ("Bank One Plan"). It most recently merged into the Chase Plan.

When Mr. Gravelle died, on September 15, 2004, he was 57 years old and a 36 year employee of Bank One and its predecessor, NBD Bancorp. He designated Plaintiff as his beneficiary. Upon his death, she became entitled to a surviving spouse death benefit.[1]

On October 5, 2004, the Pension Administration Unit sent Plaintiff a letter estimating the survivor benefits payable to her. The letter said she was entitled to receive a cash balance benefit under the Bank One Plan. This determination was confusing to Plaintiff and Bank One representatives because they believed that Plaintiff was entitled to benefits under the NBD Plan, which was grandfathered into the Bank One Plan. Admin. R. A0036.

After several phone calls between Bank One representatives, Plaintiff, and the Pension Administration Unit, the Pension Administration Unit sent a letter to Plaintiff explaining the governing plan provisions and the benefit amount she was to receive.

It explained that under Section 7.2 of the Bank One Plan, Plaintiff is to receive the greater of (i) the cash balance benefit or (ii) one of three survivor benefits described in Section 3.1(c) of Supplement B of the Bank One Plan. Under Supplement B, the survivor benefit is the greater of (a) the Spousal Death Benefit equal to 20% of Mr. Gravelle's annual rate of compensation, payable for five years (at the end of the five year period. Plaintiff would then be entitled to receive a 50% Joint and Survivor Annuity calculated using the NBD final average pay formula); (2) the benefit that would be

---

[1]The parties agree that at the time of his death Mr. Gravelle met all the requirements in order for Plaintiff to receive the survivor benefits under either Section 7.1 or 7.2 of the Bank One Plan.

payable to Plaintiff had Mr. Gravelle retired on the day before his death (a 50% Joint and Survivor Annuity calculated using the NBD final average pay formula); or (3) the benefit payable under Section 3.1 (e) of Supplement B to the Bank One Plan. Subsection 3.1(c)(iii) would provide Plaintiff with the greatest benefit.

Plaintiff believed that these calculations were not in accordance with the provisions of the Bank One Plan. She sent a letter asserting that in accordance with Section 3.1(e) of Supplement B, she was entitled to a 100% survivor benefit under the provisions in Appendix B-1 of the NBD Plan. Defendants treated the letter as a claim for benefits. On April 11, 2005 it denied her claim. On June 1, 2005, Plaintiff appealed this denial. The Appeals Committee, which makes recommendations to the Administrator, reviewed Plaintiff's claim. The Administrator, in a *de novo* review, upheld the decision to deny Plaintiff's claim.

Plaintiff filed suit under the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA").

### III.   STANDARD OF REVIEW

The parties agree than an arbitrary and capricious standard of review applies because the plan administrator has discretionary authority. The arbitrary and capricious standard of review "is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Shields v. Reader's Digest Ass'n Inc.*, 331 F.3d 536, 541 (6th Cir. 2003)(internal citations and quotations omitted). Put differently, a decision regarding eligibility for benefits is not arbitrary or capricious if the decision is "rational in light of the plan's provisions." *Daniel v. Eaton*

*Corp.*, 839 F.2d 263, 267 (6th Cir. 1988). A decision reviewed under this standard must be upheld if it is supported by "substantial evidence." *Baker v. United Mine Workers of Am. Health & Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991).

However, because Defendants' fund and administer the Chase Plan, Plaintiff argues that the Court must take into account the administrative committee's self-interest in applying the arbitrary and capricious standard. This is true. *See Firestone Tire & Rubber Co. v. Burch*, 489 U.S. 101, 115 (1989)(stating that courts should be attentive to conflicts of interest in this context); *see also Univ. Hosp. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 847 n.4 (6th Cir. 2000)(noting a potential for self-interested decision making when the plan sponsor bears all or most of the risk of paying claims, and also appoints the body designated as the final arbiter of such claims). However, the Sixth Circuit "has rejected the notion that the conflict of interest inherent in self-funded and self-administered plans alters the standard of review." *McCartha v. Nat'l City Corp.*, 419 F.3d 437 (6th Cir. 2005). Thus, the Court will consider Defendants' potential conflict of interest while applying the arbitrary and capricious standard.

**IV.    ANALYSIS**

    **A.    Pension Plan Benefits**

No dispute exists that under the Bank One Plan Plaintiff is entitled to a surviving spouse death benefit. The sole issue is the amount of her benefit. To answer this question the Court must turn to the pertinent provisions of each plan.

Although several provisions govern Plaintiff's claim, this case centers around the parties interpretation of Section 3.1(e) of Supplement B to the Bank One Plan, which provides:

> The death benefits payable to beneficiaries of Employees who were Members under the NBD Plan prior to January 1, 1976 shall be determined in accordance with this Supplement B but with reference to the death benefit provisions of the NBD Plan as in effect immediately prior to that date (hereinafter called the "Prior Plan").  In no event, however, shall any beneficiary of a Member under the Plan, whether or not such Member was also a Member under the Prior Plan, be entitled to receive more than one death benefit under either the provisions of the Prior Plan or under the provisions of Supplement B, nor shall the death benefit payable under subparagraphs (a), (b), and (c) of this subsection 3.1 to the Surviving Spouse of a Member under the Prior Plan be less than the corresponding death benefit payable to such Surviving Spouse under the Prior Plan based on the Employee's annual rate of compensation determined as of January 1, 1976.

Admin. R. at A0139.

In simpler terms, any death benefit payable to Plaintiff under Section 3.1(e) is determined in accordance with Supplement B with reference to the NBD Plan provisions in effect prior to January 1, 1976.  It is the parties interpretation of the terms "*with reference*" that is at the heart of this dispute.

Plaintiff argues that because Section 3.1(e) refers to the NBD Plan,[2] which

---

[2] The death benefit provisions of the NBD Plan in effect immediately prior to January 1, 1976 are specified in Appendix B-1, which provides:

> Section 1. Death Benefit
> (a) If a member who has reached the 55th anniversary of his birth dies in service (excepting the case of restoration to service on or after Normal Retirement Date) and proofs of death satisfactory to the Retirement Committee are filed with the Retirement Committee, a death benefit shall be payable to the beneficiary designated to receive such death benefit payments, or, if no designated beneficiary survives, to the Member's executors or administrators.
>
> (b) The death benefit payable to a Member's designated beneficiary shall be an annual allowance equal to the Retirement Allowance under the Plan that would have been payable to the Member if he had not died by had retired on the first day of the calendar month in which he died, or on his Normal Retirement Date, if earlier, on the basis that

5

provides a death benefit but contains no formula for determining the amount, she is entitled to a 100% survivor benefit based upon her husband's compensation at the time of his death - not January 1, 1976.

Defendants say that the language of Section 3.1(e) does not require that the death benefit be calculated as set forth in the NBD Plan, but merely "references" the NBD Plan. Notably, Defendant says Section 3.1(e) makes no mention of a 100% survivor benefit. Rather, Section 3.1(e) of Supplement B provides that a death benefit shall not be "less than the corresponding death benefit payable to such Surviving Spouse under the Prior Plan based on the Employee's annual rate of Compensation **determined as of January 1, 1976**." *Id* at A0038. The plain language of the Plan reveals that the calculation of Plaintiff's death benefit is to be based upon Mr. Gravelle's compensation "as of January 1, 1976", and not at the time of his death.

In further support of its interpretation, Defendants cite the NBD Summary Plan Description, which states that "[u]nder the Prior Plan [Pre-1976 Plan], the benefit was calculated as if you had chosen to retire and had picked the 100% Joint and Survivor

---

(I) he at no time would have been entitled to a Retirement Annuity under the Group Annuity Contract; and

(II) in the case of death before Normal Retirement Date, he would have elected a reduced retirement allowance commencing immediately; and

(III) he would have elected Option 1 as provided in Section 2 below, effective on the date of retirement, with the designated beneficiary deemed to be the contingent annuitant; provided that any such death benefit payable on account of a deceased male Member shall not be greater than the actuarial equivalent of the death benefit that would be payable to a husband of the same age as the Member.

Option, though the amount of death benefit varied depending on whether the beneficiary you chose was your spouse. This benefit was based on your rate of pay as of January 1, 1976." Admin. R. A0041. Defendants argue that this language is consistent with the Section 3.1(e) of Supplement B, which also provides for a 100% Joint and Survivor Annuity based on the annual rate of compensation as of January 1, 1976.

Although Plaintiff makes a scant and confusing argument that there is a conflict between the language of Section 3.1(e) and the NBD Summary Plan Description, the Court finds no merit to this claim. The NBD Summary Plan simply describes the exception for members under the Pre-1976 Plan that is preserved in Section 3.1(e). If the surviving spouse elects option three pursuant to 3.1(c) – benefits payable under Section 3.1(e) – then, she would be entitled to calculate her benefits under the Pre-1976 Plan. Section 3.1(e)'s language - "with reference to the death benefit provisions of the NBD Plan as in effect immediately prior to that date" - also references the Pre-1976 Plan.

Referencing the Pre-1976 Plan, is logical because as explained in the NBD Summary Plan Description, the employee was given the option to preserve benefits obtained prior to the 1976 amendments or to exercise his rights under the current plan in effect. Thus, it is reasonable to conclude that the new Bank One Plan, like the NBD Plan, retained this exception. Further, the Court finds it reasonable to interpret the terms "with reference" as referring to the Pre-1976 Plan. If Plaintiff chooses to calculate her benefits under Section 3.1(c)(iii), they will be calculated in accordance with the Pre-1976 Plan and not the NBD Plan.

Likewise, the plain language of both Section 3.1(e) and the NBD Summary Plan

Description both support Defendants' interpretation that January 1, 1976 is the date of determination for the employee's rate of compensation. Plaintiff argues that an employees rate of compensation as of January 1, 1976 is the floor and not the ceiling for calculating benefits. This interpretation, however, is not supported by the plain language of either Section 3.1(e) or the NBD Summary Plan Description. Instead of "determined as of" or "based on your rate of pay as of" language, the provisions would either state that the benefits would be determined based on the employees rate of compensation at death or would be no less than his rate of compensation on January 1, 1976. Thus, the Court finds Defendants' interpretation and explanation of the relevant provisions reasonable and rational.

In an ERISA matter, this Court must accept a plan administrator's rational interpretation of the a plan even if it disagrees or the participants offer an equally rational interpretation. *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004). "It is only if the court is confident that the decision-maker overlooked something important or seriously erred in appreciating the significance of the evidence that it may conclude that a decision was arbitrary and capricious." *Erickson v. Metro. Life Ins. Co.*, 39 F.Supp.2d 864, 870 (E.D. Mich. 1999). There are no facts to support such a claim here. Defendants' interpretation was "rational in light of the plan's provisions" and, therefore, not arbitrary and capricious. *See Shelby County Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 933 (6th Cir. 2000).

### B.     Breach of Fiduciary Duties

In Count II of her Complaint, Plaintiff asserts that Defendants violated their fiduciary duties under ERISA sections 404 and 405. ERISA imposes high standards of

fiduciary duty upon administrators of an ERISA plan. See 29 U.S.C. § 1104(a)(1); *Krohn v. Huron Memorial Hosp.*, 173 F.3d 542, *547 (6th Cir. 1999). Sections 404 and 405 "impose[] an unwavering duty on an ERISA trustee to make decisions with single-minded devotion to a plan's participants and beneficiaries and, in so doing, to act as a prudent person would act in a similar situation." *Id.*

Plaintiff, however, fails to allege or provide any support for a finding that Defendants breached these duties. In fact, Plaintiff does not even argue in her brief for summary judgment that Defendants violated sections 404 and 405 of ERISA. Therefore, the Court dismisses this claim.

## V. CONCLUSION

The Court **GRANTS** Defendants' motion and **DENIES** Plaintiff's motion. Plaintiff is not entitled to costs and attorney's fees.

**IT IS ORDERED.**

　　　　　　　　　　　　　　　　　　/s/ Victoria A. Roberts
　　　　　　　　　　　　　　　　　Victoria A. Roberts
　　　　　　　　　　　　　　　　　United States District Judge

Dated: March 23, 2007

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on March 23, 2007.
>
> S/Linda Vertriest
> Deputy Clerk